## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ROSE | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  22-4352 |
| | : | |
| MICROCHIP TECHNOLOGY, INC. | : | |

## MEMORANDUM

SCHMEHL, J. /s/ JLS                                    SEPTEMBER   21, 2023

Plaintiff brought this action under the Americans with Disabilities Act, as Amended ("ADAAA"), 42 U.S.C. §§12101, *et seq*. and the Pennsylvania Human Relations Act, claiming the Defendant discriminated against her because of her alleged disability, Post Traumatic Stress Disorder ("PTSD"), when it denied Plaintiff's requested accommodation to work full-time and permanently from home and insisted that she physically report to work three days per week. Plaintiff alleges that when she failed to physically appear at work, the Defendant terminated her. Plaintiff alleges that Defendant's discriminatory acts included disability discrimination, retaliation and failure to accommodate. Presently before the Court is the Defendant's Fed. R. Civ. P. 35 motion to compel an independent medical evaluation ("IME") by Defendant's designated expert. Plaintiff opposes the motion. On September 14, 2023, the Court held a telephonic oral argument on the motion. For the reasons that follow, the motion is granted.

The First Amended Complaint alleges that Plaintiff worked for Defendant as an Engineer Design-I from July 26, 2021, until her termination on June 17, 2022. First Am. Compl. at ¶¶ 11, 12. Although Defendant's headquarters are in Arizona, Plaintiff

**1**

worked remotely out of her home in Bath, Pennsylvania while based out of Defendant's location in Allentown, Pennsylvania. *Id*. at ¶ 13.

Plaintiff alleges that she has suffered from PTSD for over 10 years, "which at times, limits her ability to concentrate, sleep, eat/drink, and engage in social interaction." *Id*. at ¶ 17. Plaintiff alleges that in March of 2022, she learned that Defendant was going to require Plaintiff to physically report to work. *Id*. at ¶ 18. Plaintiff claims she requested a reasonable accommodation of continuing to work remotely from home because of her PTSD. *Id*. at ¶ 19. In her ADA accommodation request form, Plaintiff indicated her disability is "long term, lifelong" and affects major life activities such as concentrating, sleeping, eating or drinking by making her sensitive to certain environments, hypervigilant, and easily startled. *Id*. at ¶ 21. She further indicated on the request form that her disability causes insomnia and loss of appetite. *Id*. Plaintiff alleges that on April 11, 2022, her physician submitted a "Disabled Employee Accommodation Certification of Health Care Provider Form," stating that "[Plaintiff] needed to be able to work from home due to her disability and that allowing her to work from home would result in decreased emotional distress and improved focus/concentration." *Id*. at ¶ 23.

Plaintiff alleges that Defendant denied her accommodation request on the basis "that being in the office at least three (3) days a week was an essential function of Plaintiff's job (even though she had been working remotely for approximately 10 months)." *Id*. at ¶ 25. After denying Plaintiff's request, Defendant required Plaintiff to physically report to its Allentown office on June 14, 2022. *Id.* at ¶ 26. Plaintiff alleges that In response, Plaintiff offered to continue to engage in the interactive process, but Defendant, while willing to further engage, refused to change its position on Plaintiff physical reporting

to work three days a week. Plaintiff alleges that as a result of the Defendant's refusal to engage in the interactive process or accommodate her, she was forced to call out of work on June 14, 2022. *Id*. at ¶ 29. On June 17, 2022, Plaintiff was notified by email that she had been terminated. *Id.* at ¶ 30. Among the damages she seeks in this lawsuit are those for emotional distress. See Plaintiff's Prayer for Relief at D.

Defendant requests that the Court compel Plaintiff to appear for an IME by its certified examiner because Plaintiff has placed her mental health conditions in controversy by alleging that she is disabled as that term is defined under the ADAAA as a result of PTSD and by seeking emotional damages. Plaintiff responds that she has made all her medical records available to Defendant and Defendant can obtain all the information it seeks from these records and by cross-examining Plaintiff's medical providers.

Under Rule 35(a) of the Federal Rules of Civil Procedure, the court may order a party whose mental condition is "in controversy" to submit to a mental examination by a suitably licensed or certified examiner. The court will order an IME only on proper notice, and where the moving party has established "good cause" exists to order the discovery. *Id.*

In *Schlaugenhauf v. Holder,* 379 U.S. 104 (1964), the United States Supreme Court considered the meaning of "in controversy" and "good cause" in the context of Rule 35(a) and found them to be requirements that were necessarily related. *Id*. at 118-19. The Court concluded that where the Plaintiff asserts a mental or physical injury, the plaintiff herself has placed her mental or physical condition "in controversy."

*Id*. at 119. *See also*, *Douris v. County of Bucks*, 2000 WL 1358481, at *1 (E.D. Pa. Sept. 21, 2000).

In *Douris*, an ADA case, this Court granted the Defendant's request to conduct an IME of the Plaintiff. The Court noted that the "in controversy" requirement was satisfied because Plaintiff alleged that "he belongs to a protected category under the Americans with Disabilities Act because he is a qualified individual with an impairment that effects one or more of life's major activities." *Douris* at *2.

Here, Plaintiff's entire claim under the ADA is premised on a mental disability ("long term, lifelong" PTSD) that she contends supports her request for an accommodation of working from home. Further, Plaintiff alleges that she was not accommodated and ultimately terminated because of her disability. Therefore, Plaintiff has clearly placed her mental condition "in controversy" and Defendant does not have to simply accept her claim that she suffers from PTSD at face value.

Defendant must also demonstrate good cause for conducting an IME under Rule 35(a). "Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is necessary to the defendant's case." *See Womack v. Stevens Transp., Inc.,* 205 F.R.D. 445, 447 (E.D.Pa. 2001). Even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court. *Shirsat v. Mut. Pharm. Co., Inc.,* 169 F.R.D. 68, 69–70 (E.D.Pa.1996).

Plaintiff argues that Defendant has not shown good cause for an IME since Plaintiff has provided Defendant with Plaintiff's medical records and Defendant has deposed several of Plaintiff's health care providers and physicians about their evaluations. Plaintiff points out that the critical date for determining disability is April 22,

2022, the date Plaintiff was terminated, and Defendant can form an opinion about Plaintiff's mental condition at that time by having its expert review Plaintiff's medical records and the depositions of Plaintiff's health care providers and treating physicians.

In *Douris*, the Court also noted that Defendant had shown good cause for the IME. The Court reasoned that "[b]ecause liability under the ADA rests on whether Plaintiff is disabled, Defendants' have good cause to seek an examination to determine whether Plaintiff is disabled." *Id.* at *2. *See also Sarko v. Penn-Del Directory Co*., 170 F.R.D. 127, 131 (E.D. Pa. 1997) (ADA case in which the Court found good cause for an IME to determine the nature and extent of the alleged long-term impact of Plaintiff's depression on her mental state.)

Defendant has shown good cause for its request to conduct an IME because without a psychological evaluation, it would have no alternative method available to determine Plaintiff's past and present psychological state. *Womack,* 205 F.R.D. at 447 (noting that a psychiatric evaluation was relevant, and good cause was shown, because without it, the defense would be limited to cross-examining evaluations offered by the plaintiff's experts). In addition, the Court notes that besides claiming she was disabled on April 22, 2022, the date of her termination, she also alleges in the First Amended Complaint that her PTSD is "long-term and lifelong." First Am. Compl. at ¶ 21. Therefore, the Defendant's motion to compel an IME is granted.

Additionally, Plaintiff seeks a protective order under Rule 26(c)(1) of the Federal Rules of Civil Procedure limiting the scope of Plaintiff's deposition to exclude any

inquiry by Defendant into the origins of her PTSD.[1] The Court also heard oral argument on Plaintiff's request.

> Rule 26(c) provides, in pertinent part:
>
> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . The court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . .

Fed. R. Cir. P. 26(c)(1)(D).

"[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled. *See, e.g., Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994). The alleged injury must be "clearly defined and serious" and "so unreasonable as to justify restricting discovery." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). Issues relating to the scope of discovery permitted under Rule 26  rest in the sound discretion of the Court. *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 90 (3d Cir.1987)**.**

Plaintiff contends that she will be retraumatized if allowed to be deposed about the origins of her PTSD. In support, Plaintiff has submitted her own unsworn

---

[1] Plaintiff was first deposed by defense counsel on July 24, 2023 during which Plaintiff herself stopped the deposition because she became upset by defense counsel's line of questioning. Plaintiff was deposed again on August 10, 2023 during which Plaintiff's counsel stopped the deposition based on defense counsel's line of questioning.

affidavit in which she avers that following the adjournment of her last deposition she went into a "deep depression," had "increased thoughts of suicide," was "severely impacted in eating and sleeping" and had to go back on "anti-anxiety and anti-depressant medication." ECF 65-1.  Yet, during oral argument, Plaintiff's counsel admitted that Plaintiff is not currently treating with a psychologist or psychiatrist but instead is being treated by a family doctor who is prescribing the anti-depressant and anti-anxiety medication. Plaintiff has not submitted any medical documentation to support her claim. In essence, Plaintiff is asking the Court to rely solely on her unsworn affidavit concerning potential traumatization from proceeding with her deposition. Plaintiff has failed to establish a clearly defined and serious injury. Again, the Court notes that it was Plaintiff who placed her mental status at issue by bringing a lawsuit under the ADA contending that her PTSD constitutes a disability as that term is defined by the ADA. Having done so, Plaintiff cannot limit her deposition to exclude questioning about the origin of her disability.

Plaintiff contends that Defendant can obtain the information it seeks by serving ten written interrogatories on Plaintiff. Defendant responds that it is entitled to depose Plaintiff about the origins of her PTSD because the medical records reveal a lack of credibility on the part of the Plaintiff concerning her allegations that she suffers from lifelong PTSD. According to Defendant, certain medical records reveal that Plaintiff has reported that she was bullied during boot camp [ECF 50-1, p. 6], another record reveals that Plaintiff recounted that she was assaulted during boot camp [ECF 50-1, p. 11] and yet another record reveals that she "believes she witnessed a person falling to his death from a tall building." [ECF 50-1. p. 15.] Defendant points out that on other occasions, Plaintiff revealed that she had been treated for ADHD, anxiety and gender identity

disorder, but did not state that she was being treated for PTSD. [ECF 50-1, p. 21]. Defendant is entitled to cross-examine the Plaintiff on these inconsistencies.

In addition, Defendant claims only one of Plaintiff's providers has diagnosed Plaintiff as suffering from PTSD while several other providers merely noted the origins of events allegedly giving rise to Plaintiff's PTSD as related to them by Plaintiff, without making a diagnosis. Defendant claims that as a result, the medical reports of these providers and its depositions of these providers did not yield any probative information about whether Plaintiff actually suffers from PTSD.

Finally, the Court notes that answers to written interrogatories are not made under oath as are the responses to cross-examination in a deposition. For these reasons, the Plaintiff's request to limit the Plaintiff's deposition to exclude inquiry into the origins of Plaintiff's PTSD is denied.